Steven J. Nataupsky (CA SBN 155913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (CA SBN 156511)
lynda.zadrasymes@knobbe.com
Jason A. Champion (CA SBN 259207)
jason.champion@knobbe.com
Nicole R. Townes (CA SBN 272342)
nicole.townes@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>CYCLE LOCATORS INC. d/b/a MONSTER POWERSPORTS, an Illinois corporation,<br><br>Defendant. | Case No. 5:18-cv-00050<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADE DRESS INFRINGMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of Defendant Cycle Locators Inc. d/b/a Monster Powersports ("Defendant"), and alleges as follows:

## I. **JURISDICTION AND VENUE**

1.      This is an action for 1) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), 2) trademark infringement under 15 U.S.C. § 1114, 3) California common law unfair competition, and 4) unfair competition arising under California Business & Professions Code §§ 17200 *et seq.*

2.      The Court has original subject matter jurisdiction over the claims that relate to trademark infringement, trade dress infringement, and false designation of origin, pursuant to 15 U.S.C. §§ 1116 and 1121(a), and also pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. §§ 1338(b) and  1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.      This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within this Judicial District and within California.  Upon information and belief, Defendant sells its products offered in connection with the infringing marks to consumers in California and ships its products offered in connection with the infringing marks to California.  Upon information and belief, Defendant markets and advertises its products and services online in connection with the infringing marks through the https://monsterpowersport.com/ URL, which is available and accessible in California.   In addition, by committing acts of trademark infringement, trade dress infringement, false designation of origin, and unfair

competition in this Judicial District, including, but not limited to, using infringing marks in connection with the sale of products to customers in this Judicial District, Defendant's acts form a substantial part of the events or omissions giving rise to Monster's claims.

4.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) at least because Defendant resides in this Judicial District by virtue of being subject to personal jurisdiction within the Judicial District, and a substantial portion of the events complained of herein took place in this Judicial District.

## II.  THE PARTIES

5.     Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.     Upon information and belief, Defendant Cycle Locators Inc. doing business as Monster Powersports is a corporation organized and existing under the laws of the State of Illinois, having a principal place of business at 315 North Rand Road, Wauconda, Illinois 60084.

## III.  COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

### A.     Monster and Its Trademarks and Trade Dress

7.     Monster is a nationwide leader in the business of developing, marketing, selling, and distributing beverages.  Monster has achieved extensive exposure and widespread recognition of its MONSTER™ brand through its sponsorship of motorsports and motorcycle athletes, teams and events, among other sponsorships.   In addition to its numerous trademark registrations for beverages, Monster also owns trademark registrations for promoting sports and music events, sports gear and helmets, among many other goods and services.

8.     In 2002, long before Defendant's acts described herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now-famous

-2-

("Claw Icon"), MONSTER™, and MONSTER ENERGY® marks.

9.      In addition, since 2002, Monster has consistently used a distinctive trade dress for its packaging and promotional materials, including a stylized font for the mark MONSTER on a dark background, a bright contrasting accent color, including bright green, and an overall aggressive, edgy theme, as shown below (the "MONSTER Trade Dress"):







 

10.    Monster's successful line of MONSTER™ drinks has grown to include numerous other well-known products, the containers and packaging of which are all prominently marked with the MONSTER™ and Claw Icon marks. The MONSTER™ line of drinks includes or has included, but is not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster Assault®; Juice Monster® Khaos®, Juice Monster® Ripper®, Juice Monster® Pipeline Punch®, and Juice Monster® Mango Loco; Ubermonster®; Monster Energy® Gronk; Monster Energy® Import; Punch Monster® Baller's Blend and Punch Monster® Mad Dog; Monster Energy Absolutely Zero®; Monster Energy Zero Ultra®, Monster Energy Ultra Blue®, Monster Energy Ultra Red®, Monster Energy Ultra Sunrise®, Monster Energy Ultra Citron®, Monster Energy Ultra Black® and Monster Energy Ultra Violet®; Monster Rehab®, which is a line of tea-based non-carbonated energy drinks, which includes Monster's Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, Monster Rehab® Tea + Lemonade + Energy, Monster Rehab® Raspberry Tea + Energy, and Monster Rehab® Peach Tea + Energy; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle

Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; Espresso Monster™, which is an espresso beverage blended with milk and enhanced with Monster's energy blend; Monster Hydro™, which is a line of sweetened water drinks and 〣® Monster Energy® which is a five ounce concentrated energy drink, among others (hereinafter, collectively referred to as "MONSTER™ line of drinks").

11.    In 2002 and 2003, Monster filed numerous U.S. Trademark Registrations for its MONSTER Marks (as defined below) in connection with beverages and nutritional supplements, including, but not limited to, U.S. Trademark Registration Nos. 3,044,315 for the MONSTER ENERGY® mark, 3,057,061 for the MONSTER ENERGY® mark, 3,044,314 for the M MONSTER ENERGY® mark, and 3,134,842 for the M MONSTER ENERGY® mark.

12.    In addition to its numerous U.S. Trademark Registrations for beverages and nutritional supplements, Monster is also the owner of numerous trademark registrations for marks that incorporate its famous MONSTER Mark and/or MONSTER ENERGY® Mark for use in connection with clothing, sporting goods, promoting goods and services in the motorsports industry, and other products and services, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 4,721,433 | Promoting goods and services in the sports, motorsports, electronic sports, and music industries through the | 03/12/2014 | 04/14/2015 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | distribution of printed, audio and visual promotional materials; promoting sports and music events and competitions for others | | |
|  | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
|  | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
|  | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |
|  | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
|  | 4,332,062 | Silicone wrist bands; silicone bracelets; jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 4,660,598 | Lanyards; Lanyards for holding whistles, keys, eyeglasses, sunglasses, mobile telephones, badges, identification cards, event passes, media passes, photographs, recording equipment, or similar conveniences | 08/26/2013 | 12/23/2014 |

/ / /

13.     Attached hereto as Exhibits A1-A7 are true and correct copies of Monster's trademark registrations identified in Paragraph 12 of this Complaint, which are hereby incorporated by reference.  Collectively, those registrations and the MONSTER™ and MONSTER ENERGY® marks, including all common law rights therein, are referred to as the "MONSTER Marks."

14.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 3,908,600, 3,908,601, and 3,914,828 are incontestable.

15.     Long before Defendant's acts described herein, Monster has used or licensed the use of its MONSTER Marks and/or MONSTER Trade Dress for use on motorcycles and ATVs and products used in connection with or associated with motorized vehicles and motorsports, such as automotive wheels, replica cars, remote control cars, graphic kits for motorized vehicles, trailer hitch covers, tool boxes, clothing, gloves, stickers, sports helmets (including motorcycle helmets), bags, backpacks, and other related accessories.  True and correct examples of authorized products bearing Monster's MONSTER Marks and/or MONSTER Trade Dress are shown below:









16.   In addition, Monster has given away motorcycles bearing its MONSTER Marks and/or MONSTER Trade Dress in connection with cross-promotions with Kawasaki.  True and correct examples of promotional materials for these giveaways are shown below:




-8-

17.  Monster has also used, and continues to use, its MONSTER Marks and/or MONSTER Trade Dress in connection with apparel and accessories, including, for example, t-shirts, hooded shirts, hooded sweatshirts, sweatshirts, jackets, pants, bandanas, sweat bands, gloves, headgear, stickers, and decals. Since 2002, Monster has sold and/or distributed millions of articles of clothing, including, but not limited to, t-shirts, sweatshirts, outerwear, athletic attire and hats.  These clothing items have been sold and/or distributed by Monster through giveaways, the MONSTER ARMY™ program, the Monster Gear program and Monster's distribution of products to retailers and distributors, among other channels.  In addition, since at least as early as 2006, Monster has licensed its MONSTER Marks and/or MONSTER Trade Dress to third parties, including, but not limited to, Kawasaki, a large manufacturer and distributor of powersports vehicles, 43 Racing, LLC, a company owned by Ken Block who is a professional athlete and has competed in motocross and rallycross events, Clinton Enterprises, a leading supplier of motorcycle racing merchandise, and Fox Head, Inc., a leading designer of motocross gear and apparel, for use in connection with clothing and accessories.  These licensed products include, but are not limited to, Ken Block and Monster co-branded hats, t-shirts, and jackets, and Fox Head, Ricky Carmichael and Monster co-branded hats, jackets, t-shirts and helmets.  The clothing items prominently display the MONSTER Marks and/or MONSTER Trade Dress.  True and correct examples of authorized apparel bearing Monster's MONSTER Marks and/or MONSTER Trade Dress are shown below:

 




18.     Monster's MONSTER Marks and MONSTER Trade Dress are the subject of substantial and continuous marketing and promotion by Monster. Since 2002, Monster has spent over $4.6 billion dollars in advertising, promoting, and marketing its MONSTER brand and MONSTER Trade Dress. From January 2017 through November 2017, Monster spent $488 million dollars in advertising, promoting, and marketing its brand, marks, and trade dress in the U.S.

19.     Monster has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress by displaying the marks and trade dress on billions of cans of its MONSTER™ drinks sold in the U.S. Monster's promotional efforts also include – by way of example but not limitation – sponsorship of athletes, athletic teams, athletic competitions, concerts and live events around the world, widespread distribution of promotional and point of sale materials, product samplings, apparel and merchandise bearing the MONSTER Marks and/or MONSTER Trade Dress, promotion in magazines and other industry publications, promotion on the MONSTER ENERGY® website and other Internet websites, and attendance at trade shows.  Virtually every marketing and promotional item uses the colors black and green.

20.     Shown below are true and accurate representative pictures illustrating just a few examples of Monster's MONSTER point of sale materials bearing Monster's famous MONSTER Marks and MONSTER Trade Dress:

 

21.     Monster has an established and versatile history in motorsports.  A major part of Monster's brand promotion focuses on racing and motorsports. Monster sponsors or has sponsored a wide variety of motorsport athletes, teams, and/or activities, including, but not limited to, NASCAR, Formula 1, MotoGP, Moto2, Supercross, motocross, MXGP, MX2, SCORE International Off-Road Racing events including the Baja 500 and Baja 1000, the Ultra4 Rock Racing series including the King of the Hammers desert racing event, the UTV World Championships, drag racing, drifting, flat track, off road, rock racing, UTV racing, Buggy racing, rally, rallycross, snowmobile, speedway, stunt, superbike, and freestyle motocross.

22.     Monster has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress in connection with motorcycle racing events.  For example, Monster sponsors or has sponsored the following motorcycle racing events: MotoGP motorcycle racing events (16-18 around the world per year including 2-3 in the United States), the Outdoor National Motocross Series, the X Games, the MONSTER ENERGY® AMA Supercross

Series (as the title sponsor for 16 of the 17 series races each year), the MONSTER ENERGY® Speedway World Championship, Arenacross events, MX1 and MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, and the FIM MX Junior World Championship, among others.  Monster also sponsors teams that compete in motorcycle racing events including, for example, the ProCircuit Kawasaki Motocross/Supercross Team, the MONSTER ENERGY® Kawasaki Factory Team, the Yamaha Factory MotoGP Team with its renowned racers Valentino Rossi (nine-time Grand Prix World Champion, with seven championships in the premier class) and Jorge Lorenzo (five-time Grand Prix World Champion, with two championships in the premier class), the MONSTER ENERGY® Yamaha Tech 3 MotoGP Team, the Yamaha MX1 Team, the Yamaha MX2 Team, and Team Babbitt's/Monster Energy/AMSOIL/Kawaski Arenacross team.  Some examples of Monster's sponsorship of these events and teams are shown, for example, below:







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




23.     On January 1, 2017, Monster became the title sponsor of NASCAR's premier series (formerly called the NASCAR Sprint Cup Series), which is now called the Monster Energy® NASCAR Cup Series.  Monster also became the official energy drink of NASCAR.  NASCAR is the second most watched sport in the U.S., with over 5 million fans watching each of the 41 annual races.  Below is the logo for the Monster Energy® NASCAR Cup Series:



24.     Monster also has sponsored and continues to sponsor numerous athletes that compete in various classes of NASCAR racing.  For example, in 2011, Monster began its sponsorship of NASCAR driver Kyle Busch, who holds several records in NASCAR racing and won the prestigious 2015 Sprint Cup Series, the top racing series of NASCAR.  In 2015 Kyle Busch earned his 75th Xfinity Series win at Kansas Speedway racing for Joe Gibbs Racing in the No. 54 MONSTER ENERGY® Toyota Camry.  In 2012, Monster added

sponsorship of Kyle's older brother, Kurt Busch, who is also a NASCAR driver and winner of the 2010 All-Star Race and the 2004 Sprint Cup.  Monster also sponsors the Stewart Haas Racing team with its current driver Kurt Busch who drives the #41 Monster Energy/HAAS Automation Chevy.  The drivers' car prominently display the MONSTER Marks and MONSTER Trade Dress as shown, for example, below:



25.    Monster also has been a long-time sponsor of Ricky Carmichael who transitioned from one of the world's greatest Supercross and Motocross racers to a NASCAR truck driver.  Carmichael prominently promotes Monster's MONSTER Marks and MONSTER Trade Dress.  An example of Monster's sponsorship of Carmichael is shown below:



26.    Monster also sponsors or has sponsored athletes and teams who compete in other truck and car racing events, including, but not limited to, the SCORE International Off-Road Racing Series, including the BAJA 500 and BAJA 1000, the Ultra4 Rock Racing series including the King of the Hammers desert racing event, the Off-Road Championship event ("TORC"), The Best In the Desert ("BITD") racing series, including, but not limited to, the MINT 400, and the UTV World Championships.  Monster sponsors or has sponsored the following teams that compete in truck and car racing events: the Terrible Herbst Motorsports Team, Desert Assassins, AUX Racing, Camburg Racing, Duc Innovations, the Stewart Haas racing team, the Mercedes AMG PETRONAS F1 Racing Team (formerly named the Mercedes GP Petronas Formula One Team) that competes in the FIA Formula One World Championship Series with its current team drivers 3-time Formula One World Champion, Lewis Hamilton and Valterri Bottas and former drivers Nico Rosberg and Michael Schumacher, the Holden Racing Team, and the MONSTER ENERGY® X-Raid racing team. Together, Lewis Hamilton and Nico Rosberg won 19 of the 21 FIA Formula One races in 2016.  In addition, the Monster-sponsored Mercedes AMG PETRONAS F1 Racing Team previously included seven-time World Champion Michael Schumacher before Schumacher's retirement in 2012.  An example of Monster's sponsorships of athletes and teams who compete or have competed in car and truck racing events is shown below:



27. In addition, Monster recently announced a global partnership with Lewis Hamilton, which is separate and in addition to Monster's sponsorship of the Mercedes AMG PETRONAS F1 Racing Team.   As part of the global partnership, Monster and Lewis Hamilton have created and released a signature drink together.

28. Further, Monster or its sponsored athletes or teams frequently set up Monster Energy® tents at events it attends bearing the MONSTER Marks and MONSTER Trade Dress.  For example, Monster sponsored athletes and teams set up tents bearing the MONSTER Marks and MONSTER Trade Dress on contingency road at BITD racing events such as the Mint 400.  An example of Monster's MONSTER Marks and MONSTER Trade Dress being displayed at the Mint 400 is shown below:



29. In addition to sponsoring events, Monster hosts or co-hosts promotional parties at motorsports-related events, including parties that are co-sponsored with companies such as DUB, BF Goodrich, KMC Wheels, and Method Race Wheels.  Monster has hosted or co-hosted parties for multiple years at highly attended events such as the Baja 1000 and the SEMA Show in

1   Las Vegas, Nevada.

2       30.    Monster also uses the MONSTER Marks and MONSTER Trade

3   Dress in videos of its sponsored athletes.   These videos are released in

4   conjunction with Monster's co-sponsors or by Monster individually.   For

5   example, Monster co-sponsored BJ Baldwin's Recoil series of Off-Road Racing

6   videos with Toyo Tires.

7       31.    Monster also frequently has consumer promotions and point of sale

8   displays that feature promotional vehicles such as ATVs, jet skis, and

9   motorcycles that bear its MONSTER Marks and/or MONSTER Trade Dress.

10  The MONSTER Marks and/or MONSTER Trade Dress have been featured on

11  various other motor vehicles such as helicopters, motorboats, vans, trailers, tour

12  buses, semi-trucks, UTVs, ATVs, motorhomes, RVs, and the Gronk Bus.

13      32.    As of 2015, Monster sponsors the Ultimate Fighting Championship

14  ("UFC") as its official energy drink partner (excluding in Brazil).   Monster

15  sponsored athletes compete or have competed in Professional Bull Riding, the

16  Kentucky Derby, UFC, and the National Football League.   Specifically,

17  Monster has sponsored Victor Espinoza and American Pharoah, who won the

18  American Triple Crown and the Breeder's Cup Classic in 2015.   Monster also

19  sponsors Rob Gronkowski, a professional football player who plays for the

20  NFL's New England Patriots.   In 2011, Gronkowski set NFL single-season

21  records for touchdowns and receiving yards by a tight end and became the first

22  tight end in NFL history to lead the conference in scoring.   Additionally,

23  Monster sponsors Daniel Cormier, former light heavyweight champion in the

24  UFC, Ronda Rousey, former UFC women's bantamweight champion and Conor

25  McGregor, featherweight champion in the UFC.   Examples of Monster's

26  sponsorship of Conor McGregor and ultimate fighting are shown below:

27

28

1
2
3
4
5
6
7
8
9
10
11
12

 

13      33.     Monster began sponsoring Tiger Woods in 2016.  Tiger Woods is

14 one of the most successful and famous golfers in the world.  In his storied

15 career, Woods has won fourteen major championships, including the prestigious

16 Masters Tournament, the U.S. Open, The British Open Championship, and the

17 PGA Championship.

18      34.     In addition to sponsoring professional athletes and teams, since at

19 least 2004, Monster uses the mark MONSTER ARMY™ in connection with an

20 amateur athlete development program.  More than 376,000 amateur athletes in

21 various sports have applied to be accepted as part of the Monster Army through

22 the Monster Army website <www.monsterarmy.com>.  Shown below are true

23 and accurate representative pictures illustrating Monster's use of its MONSTER

24 ARMY™ mark in connection with motorcycle events and equipment:

25
26
27
28






35.    Monster supports members of the MONSTER ARMY™ in many different ways, but such support often includes assistance with clothing, gear, training, and travel.  Members of the MONSTER ARMY™ also typically wear MONSTER branded clothing and gear which prominently display one or more of the MONSTER Marks and/or the MONSTER Trade Dress in order to promote the MONSTER Marks and MONSTER Trade Dress during competition.  Further, Monster's MONSTER ARMY™ has a Facebook page at https://www.facebook.com/MonsterArmy.    The   MONSTER   ARMY™ Facebook page has hundreds of thousands of likes.

36.    When competing, or at public appearances, the sponsored athletes

-19-

and team members almost always wear clothing or use equipment that prominently displays the MONSTER Marks and/or the MONSTER Trade Dress.   The sponsored athletes and team members are frequently shown drinking MONSTER™ drinks, which bear the MONSTER Marks and the MONSTER Trade Dress.   The MONSTER Marks are also prominently displayed at the event venues, as well as on the clothing, helmets, and/or bikes, trucks or cars of riders or teams sponsored by Monster.   Through Monster's sponsorships, millions of consumers have been exposed to the MONSTER Marks and MONSTER Trade Dress when they watch the athletes and teams compete at events – many of which are televised nationwide and around the globe – or see athletes at public appearances or in Internet postings and magazines.   For example, at motorcycle racing events the MONSTER Marks and MONSTER Trade Dress are frequently displayed on athletes' helmets, gear and motorcycles, at the finish line and on banners and lane markers around the track.

37.   Monster's MONSTER Marks and/or MONSTER Trade Dress have also received significant exposure in national publications.   For example, the marks and/or trade dress have been featured in *Fortune*, *Newsweek*, *Beverage World*, *Beverage Spectrum*, *Forbes* and/or *Business Week*, among other publications.

38.   Monster's MONSTER Marks and MONSTER Trade Dress receive extensive publicity and exposure through Monster's websites including its www.monsterenergy.com website and social media sites including Monster's Facebook, Twitter, Instagram and YouTube accounts.   As of June 2015, Monster's www.monsterenergy.com website was receiving over 50,000 visitors per day.   Monster's Facebook page has over 26 million "likes."   Monster's Instagram page has over 4.3 million followers and Monster's Twitter page has over 3.3 million followers.   Monster's YouTube page has over 284 million

views.   Monster's MONSTER Marks and MONSTER Trade Dress are displayed on these websites and social media pages.

39.   Monster's MONSTER™ line of drinks has achieved substantial commercial success.  Worldwide retail sales now exceed 3 billion cans per year, with estimated retail sales at approximately $6 billion per year worldwide. Monster's MONSTER™ brand has established itself as the best-selling energy drink brand in the United States by unit volume.  While Monster continues to expand its successful MONSTER™ line of drinks, Monster's best-selling drink is still the original Monster Energy®, which prominently features the MONSTER Marks and the MONSTER Trade Dress.

40.   As a result of Monster's substantial use and promotion of its MONSTER Marks and MONSTER Trade Dress, the marks and trade dress have acquired great value as specific identifiers of Monster's products and services and serve to identify and distinguish Monster's products and services from those of others.  Customers in this Judicial District and elsewhere readily recognize the MONSTER Marks and MONSTER Trade Dress as distinctive designations of the origin of Monster's MONSTER brand of products, services and promotional items.  The MONSTER Marks and MONSTER Trade Dress are intellectual property assets of enormous value as symbols of Monster and its quality products, services, reputation, and goodwill.

**B.**   **Defendant's Infringing Activities**

41.   Defendant is engaged in the business of distributing, selling and purchasing powersports vehicles including motorcycles, dirt bikes, ATVs, and side-by-sides.   Defendant   owns   and   operates   the   website https://monsterpowersport.com/   and   maintains   the   Facebook   account https://www.facebook.com/monsterpowersports/,   Instagram   account https://www.instagram.com/monster_seal/?hl=en,   and   YouTube   page https://www.youtube.com/user/monsterpowersport/featured.

42.    Without permission or consent from Monster, Defendant is using the MONSTER Marks in a manner confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress.    Some examples of Defendant's use of infringing marks in connection with its advertising and marketing materials are shown below:







 

43.     Defendant is also using the MONSTER Marks in connection with distributing and/or selling clothing.  Defendant is using the MONSTER Marks in a manner confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress.

44.     Defendant is using the MONSTER Marks on vehicles to market and promote its goods and services.   Examples of Defendant's use of the MONSTER Marks on vehicles are shown below:

 

45.     Upon information and belief, Defendant is also using the MONSTER Marks in connection with sponsorship of Mixed Martial Arts ("MMA") events.  Upon information and belief, an image showing Defendant's sponsorship of a MMA event is displayed below:



46.     As shown above and on Defendant's website and social media pages, Defendant is using a MONSTER mark in a manner confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress, including, but not limited to, by displaying MONSTER marks as follows .  Defendant's use of MONSTER marks on and in connection with the sales of powersports vehicles is confusingly similar to Monster's MONSTER Marks and the MONSTER Trade Dress.  In addition, Defendant uses a shade of green that is almost identical to the green used by Monster.

47.     Upon information and belief, Defendant was aware of Monster, the MONSTER Marks and the MONSTER Trade Dress when Defendant commenced its infringing activities.  Moreover, Defendant has been aware of the MONSTER Marks and MONSTER Trade Dress since at least as early as December 30, 2014, when Defendant's owner, Scott Cook, posted the

photograph shown below of himself wearing a t-shirt bearing Monster's MONSTER Marks and MONSTER Trade Dress.



Further, Defendant was likely aware of Monster's sponsorship of motorsports since at least as early as December 30, 2014 because the t-shirt worn by Mr. Cook in the photograph shown above is a t-shirt co-branded with the MONSTER Marks and Kawasaki's mark. This photograph also supports that Defendant's use of the MONSTER Marks is a deliberate attempt to associate itself and its goods and services with Monster.

48.     As further evidence of Defendant's deliberate attempt to associate itself and its goods and services with Monster, Defendant is reselling Kawasaki motorcycles bearing Monster's trademarks. Monster provided authorization to Kawasaki to use its trademarks in connection with this motorcycle. Defendant is selling these motorcycles in connection with the MONSTER Marks. An image showing Defendant's advertising and promotion of this motorcycle bearing Monster's trademarks is shown below:



49.    Moreover, Monster sent Defendant a cease and desist letter on July 5, 2017.  Defendant is continuing to use the MONSTER Marks despite receiving the cease and desist letter from counsel for Monster.

50.    Without permission or consent from Monster, Defendant has infringed Monster's MONSTER Marks and MONSTER Trade Dress in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell goods and services using the MONSTER Marks including, but not limited to, the ,  and  marks.

51.    Upon information and belief, Defendant's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendant's goods and services and are intended to cause consumers and potential customers to believe that Defendant's business and the goods and services that it offers are associated with Monster or Monster's MONSTER family of goods and services, when they are not.

52.    Indeed, Defendant has a duty to avoid confusion with Monster, the MONSTER Marks and the MONSTER Trade Dress because Defendant entered the market after Monster.   Nevertheless, Defendant has purposely sold, promoted, marketed, distributed and/or offered its goods and services in a manner that causes a likelihood of confusion with Monster, the MONSTER

Marks and the MONSTER Trade Dress.

53.   In addition, Defendant's infringing conduct has resulted in confusion.   At least one person has inquired to Monster whether Defendant is associated or affiliated with Monster and its goods and services.   This confusion causes substantial injury to Monster's business reputation and goodwill.

54.   By virtue of the acts complained of herein, Defendant has created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and services and Defendant's goods and services, and has otherwise competed unfairly with Monster by unlawfully trading on and using Monster's MONSTER Marks and MONSTER Trade Dress, without Monster's permission or consent.

55.   Upon information and belief, Defendant's acts complained of herein are willful and deliberate.

56.   Defendant's acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendant is enjoined from its wrongful acts and infringement.

57.   Defendant's acts complained of herein have caused Monster to suffer irreparable injury to its business.   Monster will suffer substantial loss of goodwill and reputation unless and until Defendant is preliminarily and permanently enjoined from the wrongful acts complained of herein.

## IV.  <u>FIRST CLAIM FOR RELIEF</u>

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

58.   Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-57 of this Complaint as though fully set forth herein.

59.     This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

60.     As a result of the widespread use and promotion of Monster's MONSTER Marks and MONSTER Trade Dress, the marks and trade dress have acquired strong fame and secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the MONSTER Marks and MONSTER Trade Dress with Monster.

61.     Defendant has infringed the MONSTER Marks and MONSTER Trade Dress, and created a false designation of origin, by using in commerce, without Monster's permission, the confusingly similar MONSTER marks, including, but not limited to, by displaying the following MONSTER marks , , and  in connection with the advertisement, offering for sale, and/or sale of Defendant's goods and services.

62.     Defendant's actions are likely to cause confusion and mistake, or to deceive customers and the public as to the affiliation, connection, association, origin, sponsorship, or approval of Defendant's goods or services or Defendant's commercial activities, with Monster in violation of 15 U.S.C. § 1125(a).

63.     Upon information and belief, Defendant did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's goods and services are associated with, sponsored by or approved by Monster, when they are not.

64.     Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and MONSTER Trade Dress, and without the consent of Monster, willfully violated 15 U.S.C. § 1125(a).

65.    Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

66.    Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## V.  SECOND CLAIM FOR RELIEF

**(Trademark Infringement Under 15 U.S.C. § 1114)**

67.    Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-66 of this Complaint as though fully set forth herein.

68.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

69.    Monster owns valid and enforceable federally registered trademarks for MONSTER Marks, including at least the registrations listed in paragraph 12 above.

70.    Defendant has used in commerce, without permission from Monster, colorable imitations, and/or confusingly similar marks to Monster's MONSTER Marks that are the subject of at least Monster's U.S. Trademark Registration Nos. 4,721,433, 3,908,601, 3,914,828, 3,923,683, 3,908,600, 4,332,062, and 4,660,598, in connection with the advertising, marketing, and/or promoting of Defendant's goods and services.  Such use is likely to cause confusion or mistake, or to deceive.

71.    Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendant did so with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendant's goods and services are associated with, sponsored by, approved by,

and/or originating from, Monster, when they are not.

72.     Upon information and belief, Defendant had actual knowledge of Monster's ownership and prior use of the MONSTER Marks, and has willfully violated 15 U.S.C. § 1114.

73.     Defendant, by its actions, has damaged Monster in an amount to be determined at trial.

74.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## VI.  <u>THIRD CLAIM FOR RELIEF</u>

### (Unfair Competition Under California Business & Professions Code §§ 17200 *et seq.*)

75.     Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-74 of this Complaint as though fully set forth herein.

76.     This is an action for unfair competition under California Business & Professions Code §§ 17200, *et seq*.

77.     By virtue of the acts complained of herein, Defendant has intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*.

78.     Defendant's acts complained of herein constitute trademark infringement, trade dress infringement, unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Monster.

79.     Defendant, by its actions, has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights,

for which Monster has no adequate remedy at law.

## VII.  FOURTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

80.   Monster hereby repeats, realleges, and incorporates by reference paragraphs 1-79 of this Complaint as though fully set forth herein.

81.   This is an action for unfair competition under the common law of the State of California.

82.   Defendant's acts complained of herein constitute trademark infringement and unfair competition under the common law of the State of California.

83.   By virtue of the acts complained of herein, Defendant has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

84.   Defendant's aforementioned acts have damaged Monster in an amount to be determined at trial.

85.   Defendant has irreparably injured Monster.  Such irreparable injury will continue unless Defendant is preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

86.   Defendant's willful acts of unfair competition under California common law constitute fraud, oppression and malice.  Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Monster prays for judgment against Defendant as follows:

1.   That the Court render a final judgment in favor of Monster and against Defendant on all claims for relief alleged herein;

2.     That the Court render a final judgment that Defendant has violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing the MONSTER Marks and MONSTER Trade Dress by using a false designation of origin, through the marketing, sale and promotion of Defendant's goods and services;

3.     That the Court render a final judgment that Defendant has willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's trademark rights in at least the marks that are the subject of U.S. Trademark Registration Nos. 4,721,433, 3,908,601, 3,914,828, 3,923,683, 3,908,600, 4,332,062, and 4,660,598;

4.     That the Court render a final judgment declaring that Defendant has violated California Business and Professions Code §§ 17200, *et seq.* by committing trademark infringement, trade dress infringement and unfairly competing with Monster;

5.     That the Court render a final judgment declaring Defendant has violated California common law by unfairly competing with Monster;

6.     That Defendant, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with Defendant who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

a.     using marks that are confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress, including, but not limited to, the , and/or marks in connection with the advertising, promotion, or sale of Defendant's goods or services, using any of the MONSTER Marks or MONSTER Trade Dress, in connection with Defendant's goods or services or advertising or promoting Defendant's goods or services, and/or using confusingly similar variations of any of

the MONSTER Marks or MONSTER Trade Dress in any manner that is likely to create the impression that Defendant's goods or services originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

b. manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized goods bearing any of the MONSTER marks including, but not limited to, the , , and/or  marks, the MONSTER Marks or the MONSTER Trade Dress, and/or any confusingly similar marks or trade dress;

c. filing any applications for registration of any trademarks, trade dress, or designs confusingly similar to the MONSTER Marks or MONSTER Trade Dress;

d. otherwise infringing any of the MONSTER Marks or any of Monster's other trademarks, or Monster's MONSTER Trade Dress;

e. falsely designating the origin of Defendant's goods or services;

f. unfairly competing with Monster in any manner whatsoever; and

g. causing a likelihood of confusion or injury to Monster's business reputation;

7. That Defendant be directed to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which they have complied with the injunction pursuant to 15 U.S.C. § 1116;

1      8.    That Defendant be required to account to Monster for any and all

2  profits derived by Defendant and all damages sustained by Monster by virtue of

3  Defendant's acts complained of herein;

4      9.    That Defendant be ordered to pay over to Monster all damages

5  which Monster has sustained as a consequence of the acts complained of herein,

6  subject to proof at trial, together with prejudgment and post-judgment interest;

7      10.    That this case be deemed exceptional and the amount of the

8  damages be trebled and that the amount of profits be increased by as many times

9  as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

10      11.    That Monster be awarded exemplary damages from Defendant

11  pursuant to Cal. Civ. Code § 3294;

12      12.    That Defendant's actions be deemed willful;

13      13.    That an award of reasonable costs, expenses, and attorneys' fees be

14  awarded to Monster pursuant to at least 15 U.S.C. § 1117;

15      14.    That Defendant be required to deliver and destroy all devices,

16  literature, advertising, goods and other unauthorized materials bearing the

17  MONSTER marks, including, but not limited to, the ,

18  

19  , and/or  marks, or the MONSTER Marks or

20  MONSTER Trade Dress or any confusingly similar marks or trade dress,

21  pursuant to 15 U.S.C. § 1118;

22      15.    That Monster be awarded restitution and disgorgement; and

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

16. That Monster be awarded such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 10, 2018      By: /s/ *Lynda J. Zadra-Symes*
Steven J. Nataupsky
Lynda J. Zadra-Symes
Jason A. Champion
Nicole R. Townes

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY

## IX.  <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Monster Energy Company hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  January 10, 2018          By: /s/ *Lynda J. Zadra-Symes*
                                        Steven J. Nataupsky
                                        Lynda J. Zadra-Symes
                                        Jason A. Champion
                                        Nicole R. Townes

                                  Attorneys for Plaintiff,
                                  MONSTER ENERGY COMPANY

27213605